[Cite as *In re Evans v. Evans-Sanford*, 2020-Ohio-5315.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| In the Matter of: | : | |
| William Evans, Jr. | : | Case No. 20CA3901 |
| Plaintiff-Appellant, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| Margaret Kathryn Evans-Sanford | : | |
| Defendant-Appellee. | : | **RELEASED 10/29/2020** |

<u>APPEARANCES</u>:

William H. Evans, Jr., Youngstown, Ohio, pro se appellant.

Bruce W. MacDonald, Greenup, Kentucky, for appellee.

Hess, J.

{¶1}    Appellant William Evans, Jr. appeals the probate court judgment dismissing with prejudice his action against his mother, Margaret Evans-Sanford, in which he contested his father's will. In his complaint filed November 2017, Evans alleged that his father died in 1995 and an application to probate the will was made in March 1996. Evans alleged that he did not learn of the will or the 1996 probate proceedings until November 2016. He attached a copy of the will and a multitude of filings related to the probate proceedings to his complaint. The probate court dismissed Evans's action pursuant to Civ.R. 12(C) and 12(B)(6), finding no theory under which it could grant Evans judgment. The probate court also found Evans's action barred by the applicable statute of limitations governing the contest of a will.

{¶2}    Evans raises three assignments of error. He contends that the trial court erred in interpreting the will "in a manner counter to the obvious intents of the testator." He contends that his father's intentions were to leave certain real estate, plus $10,000.00 to him and the probate court erred when it found that his father, William Evans, intended to leave his entire estate, after the payment of debts, to his wife, Margaret Kathryn Evans (NKA. Evans-Sanford). We find that the will is unambiguous. It directs that all lawful debts be paid and the reminder of William Evans's estate be given to his beloved wife, Margaret Kathryn Evans.  The other legatees and devisees in the will would inherit only in the event Margaret Evans should predecease William Evans. As Margaret Evans-Sanford is alive, the condition that would allow William Evans, Jr. to inherit land or money was never triggered. William Evans, Jr. is entitled to receive nothing under the will. We overrule his first assignment of error.

{¶3}    Evans also contends that the 1996 probate proceedings established that he is the sole heir to certain real estate, plus $10,000. However, we find nothing in the record to support Evans's contention. The probate forms Evans references for support were filed by the executor and did not have the same legal weight as a probate court order. We overrule his second assignment of error.

{¶4}    Last Evans contends that the probate court erred in granting a motion for judgment on the pleadings because there are material facts in dispute.  However, because the trial court correctly determined that Evans's action was barred by the statute of limitations, the existence of disputed material facts, if any, is irrelevant. We overrule Evans's third assignment of error and affirm the judgment of the probate court.

## I. FACTS & PROCEDURAL HISTORY

{¶5}    William Evans, Jr. filed an action in November 2017 in the Scioto County, Ohio Court of Common Pleas, Probate Division in which he contested the will of his father William Evans. Evans sued his mother, Margaret Evans-Sanford, who is William Evans's surviving spouse and was the executor of the will. In his complaint, Evans alleged that his father died in 1995 and probate proceedings concerning his father's will occurred in March 1996. Evans contends that he did not learn of the existence of the will or the probate proceedings until November 2016.  Evans alleged that, according to his father's will, he was entitled to receive certain real estate, plus $10,000.00.  He also contends that his mother fraudulently deprived him of his inheritance because she knowingly and intentionally concealed the will and the probate proceedings from him. Evans attached a copy of a "Waiver of Notice of Probate of Will" that bears his signature and the date "2/22/96" but he alleged that this signature is a forgery. He sought: (1) a declaratory judgment that he was entitled to certain property, plus $10,000.00 under the will; (2) an injunction to compel compliance with the will; (3) compensatory and punitive damages in excess of $25,000.00; and (4) that he be served with any certificates or waivers that were filed in the 1996 probate proceedings.

{¶6}    Evans attached his father's will and a number of documents from the 1996 probate proceedings to the complaint. The will named Margaret Kathryn Evans as the executor and provided in relevant part:

> I, William H. Evans, * * * being of full age and of sound mind and memory, do make, publish and declare this to be my last Will and Testament, hereby revoking all wills and codicils by me heretofore made.
>
> ITEM I. I direct that my funeral expenses, all lawful debts, charges and allowances payable by law be paid as soon as practicable after the time of my decease.

> ITEM II. All the rest, residue and remainder of my estate, including property both real and personal, of every kind and description, wheresoever situate, I give, devise and bequeath to my beloved wife, MARGARET KATHRYN EVANS, absolutely and in fee simple.

The will also contained provisions in the event Margaret Kathryn Evans predeceased him or died within 30 days following his death, that certain real estate, plus $10,000 would go to his son William Evans, Jr., $10,000 to his daughter-in-law, and the reminder of his estate to his two grandsons, equally. It is undisputed that Margaret Kathryn Evans did not predecease her husband and that she survived him by more than 30 days.

{¶7}   Evans also alleged that he is incarcerated in prison with a sentence of 15 years to life. *See State v. Evans*, 4th Dist. Scioto No. 05CA3002, 2006-Ohio-2564. Evans attached a document to his complaint in which he stated that he filed a previous action against his mother and his ex-wife in 2013. *See Evans v. Evans,* 4th Dist. Scioto No. 14CA3647, 2015-Ohio-378. In his 2013 action, which he brought in the General Division of the Court of Common Pleas, Scioto County, he made allegations concerning his father's will, which the trial court dismissed. We affirmed the trial court's dismissal of his complaint and, concerning his allegations about his father's will, we determined:

> Evans also fails to state any viable claim concerning his father's will. He alleges that his father died in 1995, but he makes no allegations that any wrongful acts concerning his father's will occurred prior to his death, at the time of his father's death, or during the six or seven years following it. He states that he does not know if any changes to his parents' wills occurred, but he assumes that there may have been some illegal changes. His assumption is based on his understanding that, at some point in either 2001 or 2002, his mother made "a subtle and brief mention" that he was "cancelled" out of the will of his father and mother. Complaint ¶9. Even if we accept the allegations of his complaint as being true, we cannot construe any possible civil claim for relief. And we also agree with the trial court that to the extent any possible claim concerning his father's will exists, jurisdiction over it lies with a probate court. * * * Summary judgment and/or outright dismissal for lack of jurisdiction was appropriate in this claim also.

*Id.* at ¶ 24.

**{¶8}** Margaret Evans-Sanford filed an answer in which she asserted that the complaint failed to state a claim upon which relief can be granted and is barred by the statute of limitations. Both parties filed motions for summary judgment. The probate court denied the motions for summary judgment, issued a notice that it would consider a motion for judgment on the pleadings, and directed the parties to file responses. In its notice, the probate court found that there are at least two facts that the parties appear to agree upon: (1) the will attached to the complaint is William Evans's last will and testament and (2) Margaret Kathryn Evans not only survived her husband by 30 days, but continues to survive. As a result, the item in the will which gives certain real estate, plus $10,000 to William Evans, Jr. is not applicable.

**{¶9}** Evans responded and argued that the probate court's interpretation of the provision in the will that made his inheritance contingent upon his mother predeceasing his father or dying within 30 days of his father was a misinterpretation and made his father's wishes null and void. Evans argued that such an interpretation was contrary to his father's intentions because it would mean that his "father, and the two attorneys, were merely wasting their time, * * * they spent all that time and legal resources solely to cover the rare instance that they both died within 30 days of each other."

**{¶10}** Evans also argued that there were documents filed in the 1996 probate proceedings that identified him as "Next of Kin, Legatees and Devisees" and that he was identified as an "other known survivors who are or would be entitled to inherit under the statutes of decent and distribution." He argues that these documents are evidence that he is entitled to inherit certain real estate, plus $10,000 pursuant to his father's will. He

argued, "So how is it that these documents were executed, and filed in March 04, 1996, stating that Bill is a legatee, and that Bill waived the Notice, if Bill is not even eligable [sic] to receive anything because his mother survived past 30 days?"

{¶11} Margaret Evans-Sandford responded to the probate court's notice by filing a motion for judgment on the pleadings. She argued that the applicable statute of limitations to challenge the will has expired and that, on the merits of the complaint, she is entitled to judgment on the pleadings because she survived Williams Evans by more than 30 days and is therefore entitled to her husband's entire estate as provided in Item II of the will.

{¶12} The probate court granted judgment in Margaret Evans-Sandford's favor. It found that the will filed in probate court in 1996 and attached to Evans's complaint was William Evans's will and that Margaret Evans-Sanford was the surviving spouse. Based on the provisions in the will, which are not ambiguous, the will directed first that all debts be paid and then under Item II, all of the remainder be given to his beloved wife, absolutely. Item III of the will begins "In the event of" and states possible contingencies, which if met, then provisions in Items IV, V and VI would apply (the bequests to William Evans, Jr., the daughter-in-law, and the grandsons). Because Margaret Evans-Sanford did not die before William Evans, nor did she die within 30 days of his death, she took it all under the will. "His father wanted his mother to have it to do with it as she so choses, unless she did not survive him as stated in Item III." Additionally, the probate court found that the statute of limitations governing will challenges had long since expired.

## II. ASSIGNMENTS OF ERROR

**{¶13}** Evans assigns the following errors for our review:

I.      Court erred in [Interpreting] the last will and testament in a manner counter to the obvious intents of the testator. (Brackets sic.)

II.     Court erred in failing to adhere to the facts established in the probate of will proceedings of March 04, 1996, Estate of Williams Evans, Sr., which already established Bill, Jr., as the sole heir to the real estate at 1722 Charles St. plus $10,000.00. (Emphasis sic.)

III.    Court erred in granting a motion for judgment on the pleadings when issues of material facts are still in dispute.

## III. LAW AND ANALYSIS

### A. Standard of Review

**{¶14}** In a Civ.R. 12(C) motion for judgment on the pleadings, the court is restricted solely to the allegations contained in the pleadings. Furthermore, all material factual allegations in the complaint, along with all reasonable inferences to be drawn therefrom, must be construed in favor of the nonmoving party. This court has characterized a motion for judgment on the pleadings as a belated Civ.R. 12(B)(6) motion and applied the same standards of review.  We give de novo review of the motion to determine if it was properly granted as a matter of law. *Perrysburg Twp. v. City of Rossford,* 103 Ohio St. 3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5; *State ex rel. Pirman v. Money,* 69 Ohio St.3d 591, 592, 635 N.E.2d 26 (1994); *King v. Stump,* 4th Dist. Ross No. 97CA2349, 1998 WL 903494, *4 (Dec. 28, 1998). The test to determine whether a complaint can be dismissed pursuant to Civ.R. 12(B)(6) is "the court must find beyond doubt that plaintiff can prove no set of facts warranting relief after it presumes all factual allegations in the complaint are true, and construes all reasonable inferences in plaintiff's favor." *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490, 633 N.E.2d 1128

(1994). Thus, a complaint will be dismissed, pursuant to Civ.R. 12(B)(6), if it appears beyond doubt that the plaintiff can prove no set of facts entitling the plaintiff to relief.

{¶15} When considering a motion pursuant to Civ.R. 12(B)(6), the court cannot rely on evidence or allegations outside of the complaint. *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207, 680 N.E.2d 985 (1997). However, "[m]aterial incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6) motion to dismiss." *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, fn. 1, 673 N.E.2d 1281 (1997).

> When a complaint is based upon written instruments properly incorporated into the complaint, courts must accept the writings as true and afford the plaintiff "all reasonable inferences possibly derived therefrom." A Civ.R. 12(B)(6) dismissal is proper only when the language used in the written instrument is clear and unambiguous and creates "an insuperable bar to relief." Conversely, trial courts should not dismiss a complaint for failing to state a claim when a writing is open to interpretation. (Citations omitted.)

*Alexander Local School Dist. Bd. of Edn. v. Village of Albany*, 2017-Ohio-8704, 101 N.E.3d 21, ¶ 26 (4th Dist.).

{¶16} Here, Evans's complaint was based upon the will and related 1996 probate proceeding filings, which were attached to and referenced in his complaint. Therefore, the probate court properly considered them as part of the complaint for purposes of determining the motion.

### B. Interpretation of the Will

{¶17} Evans contends that the probate court erred in interpreting the will because the clear intentions of his late father were to give him certain real estate, plus $10,000.00.

{¶18} The will is unambiguous and provides in Item I, that all lawful debts be paid and, in Item II, "All the rest, residue and remainder of my estate * * * I give, devise and

bequeath to my beloved wife, Margaret Kathryn Evans, absolutely and in fee simple." Under Items III, IV, V and VI of the will, William Evans provided for contingent bequests and devises to William Evans's son, daughter-in-law, and grandsons, in the event his wife died first, died with him in a common accident, or died within 30 days of his death. Because Margaret Evans survived her husband by more than 30 days, Item II of the will gives his wife everything after legal debts are paid. The bequests and devises made in Items IV, V, and VI were not triggered.

**{¶19}** Evans argues that the will shows an intent to give him certain real estate, plus $10,000 because Item III makes no sense to him. He finds incredulous that "they spent all that time and legal resources solely to cover the rare instance that they both died within 30 days of each other." Although it may be "a rare instance" that his father and mother would die within 30 days of each other, Evans ignores the other, common situation covered in Item III – when the testator's spouse dies before the testator. Item III provides that if William Evans's wife should die before him, the bequests and devises in Items IV, V, and VI would be made. There is nothing ambiguous or odd about this provision. It is undisputed that Margaret Evans-Sanford did not predecease William Evans and is alive now. William Evans intended to bequeath everything to his wife if she survived him by 30 days and she did. The probate court did not err in interpreting the will.

**{¶20}** Evans provided additional supplemental authority in a document captioned "Treatise on Construction of the Evans Will * * *" in which he argued that the contingent provision in the will, set forth in Items III through VI, created a life estate in Margaret Evans. He cited *Dunkel v. Hilyard*, 146 Ohio App.3d 414, 2001-Ohio-2577, 766 N.E.2d (4th Dist.) (ambiguous, conflicting terms created a fee simple absolute in surviving

spouse); *Johnson v. Johnson*, 51 Ohio St. 446, 38 N.E.61 (1894) (ambiguous, conflicting terms created a life estate in surviving spouse); *Baxter v. Bowyer,* 19 Ohio St. 490 (1869) (ambiguous, conflicting terms created a life estate in surviving spouse). These cases are distinguishable on their facts because they each involved ambiguous language that created conflicting conveyances. Here, we have an unambiguous will that does not contain any conflicting conveyances. William Evans expressly, unambiguously bequeathed his entire estate to his wife as long as she survived him by 30 days, which she did.

**{¶21}** We overrule Evans's first assignment of error.

C. Facts "Established" in the 1996 Probate Proceedings

**{¶22}** Evans argues that the documents in the 1996 probate proceedings established that he is to inherit certain real estate, plus $10,000. Specifically, he points to a document that identified his relationship to the decedent as "son" on a form captioned, "Surviving Spouse, Next of Kin, Legatees and Devisees" and states, "The following are decedent's known surviving spouse, and other known survivors who are or would be entitled to inherit under the statutes of descent and distribution."[1]  It also lists him as one of several "known persons surviving decedent, and named in his Will as legatees or devisees."

**{¶23}** Contrary to Evans's argument, these documents are not probate court orders that establish his legal right to inherit under the will. Evans is William Evans's son,

---

[1] Statutes of descent and distribution govern who receives unaccounted-for property where a decedent fails to dispose of some or all of his or her property through a testamentary transfer and provide a default distribution scheme to resolve the uncertainty created by intestacy. *See Stevens v. Radey,* 117 Ohio St.3d 65, 2008-Ohio-291, 881 N.E.2d 855, ¶ 7-8. "Intestacy" means "the state or condition of dying without having made a valid will, or without having disposed by will of a part of his [or her] property." *Black's Law Dictionary*, (5th Ed.).

he was identified as a legatee and devisee in the will, and he would have inherited under Item IV, if his mother had died before his father, as provided in Item III. Therefore, his name, as well as others, were listed on these forms and filed by the executor in the probate court. These forms are not probate court orders and they do not establish Evans's legal right to inherit under the will. The probate court did not err or fail to give these forms their proper legal interpretation or meaning.  We overrule Evans's second assignment of error.

### D. Judgment on the Pleadings

{¶24} Evans argues that it was improper to grant a judgment on the pleadings because there were material facts in dispute. However, in making a determination for judgment on the pleadings, the probate court is limited to the pleadings and materials properly incorporated into the pleadings and construes them in Evans's favor. The probate court properly limited its review and correctly interpreted the will.

{¶25} Moreover, the probate court determined that Evans's action was barred by the applicable statute of limitations governing the contest of a will. We agree. Thus, Evans's contention that there are material facts in dispute is irrelevant.

{¶26} R.C. 2107.76 governs will contest actions and provides, in relevant part:

> No person who has received or waived the right to receive the notice of the admission of a will to probate required by section 2107.19 of the Revised Code may commence an action permitted by section 2107.71 of the Revised Code to contest the validity of the will more than three months after the filing of the certificate described in division (A)(3) of section 2107.19 of the Revised Code. * * * A person under any legal disability nevertheless may commence an action permitted by section 2107.71 of the Revised Code to contest the validity of the will within three months after the disability is removed, * * *.

When William Evans's will was administered in 1996, the applicable period to bring a will contest action was four months, not three.

**{¶27}** Evans attached a copy of a "Wavier of Notice of Probate of Will" that appears to bear his signature and is dated 2/22/96. Therefore, Evans had four months after the filing of the certificate described in R.C. 2107.19(A)(3) (certificate of giving notice or waiver of notice) to file an action contesting his father's will. He filed the underlying action on November 15, 2017, more than 20 years after the statute of limitations expired.

**{¶28}** In probate court, Evans argued that this period is not applicable to him because: (1) his signature on the wavier form is a forgery and (2) he is under a legal disability under R.C. 2131.02(C), which governs persons "in captivity." Neither of these arguments has any merit. Even if Evans did not receive the notice or if someone forged his name on the waiver form, he was required to file an action contesting the will within four months after he had actual knowledge of his father's death. *See Palazzi v. Estate of Gardner*, 32 Ohio St.3d 169, 174-175, 512 N.E.2d 971 (1987); 33 Ohio Jur.3d Decedents' Estates, Section 925 ("Even where a party is not provided with the required statutory notice regarding the admission of a will to the probate court, where it is undisputed that such party nevertheless had actual knowledge of the death of the testator, such party must timely commence any action contesting such will after such individual acquires such knowledge, i.e., within three months [or formerly four months] after the party learns of the death of the testator.") Though it is likely Evans learned of his father's death at or near the time it occurred in May 1995, we know by his court filings that he knew of his father's death at least by 2001 or 2002 when he alleged his mother spoke of his disinheritance. *See Evans v. Evans,* 4th Dist. Scioto No. 14CA3647, 2015-Ohio-378. Regardless of

whether Evans learned of his father's death near the time of death in 1995, during the probate proceedings in 1996, or when he alleged his mother mentioned his disinheritance in 2001 or 2002, his November 2017 action is barred by the applicable statute of limitations.

**{¶29}** Despite Evans's contention that he is under a legal disability under R.C. 2131.02(C) ("person in captivity"), we have found no cases that interpreted "in captivity" as used in this statutory provision to mean "incarceration in prison." Evans cited *In re Estate of Grogan*, 108 N.E.2d 170 (8th Dist. 1951). However, in *Grogan,* the person was confined in the county jail, awaiting trial for the murder of his wife. The court found that a person in pretrial detention in a county jail is a "person in captivity" and therefore, appellant was excused from presenting his claim during this time because he was under a "legal disability." *Grogan,* however, dealt strictly with a pretrial detention – a person detained under the presumption of innocence – not a convicted criminal serving a prison term. We have found no caselaw that interprets the term "in captivity" as meaning "prison incarceration." *See In the Matter of Browning*, 5th Dist. Nos. 4-CA-81, 26-CA-81, 28-CA-81, 1981 WL 6554 (Dec. 7, 1981) (murder suspect in police-guarded hospital room was "in captivity"); *see also* 66 Ohio Jur.3d Limitations and Laches, Section 103 (discussing the tolling provision in R.C. 2305.15(B): "When a person is imprisoned for the commission of any offense, the time of the person's imprisonment may not be computed as any part of any period of limitation provided by the Revised Code within which any person must bring any action against the imprisoned person. This provision tolls the statute of limitations only with regard to suits brought against persons who are imprisoned; it cannot

be used to toll the statute of limitations for an imprisoned person's claim against someone else.").

**{¶30}**  Both *Grogan, supra,* and *Browning, supra,* involved pretrial detainments of persons awaiting trial and who were cloaked with a presumption of innocence. We are reluctant to expand by judicial fiat the definition of "in captivity" in R.C. 2131.02(C) to mean incarcerated in prison, particularly where the General Assembly has specifically used the term "person confined to a correctional institution" and not "person in captivity" in other probate statutes. *See* R.C. 2111.01(D)(2)[2] (which defines "incompetent" to include "any person confined to a correctional institution within this state."); *Hulsmeyer v. Hospice of Southwest Ohio, Inc.,* 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 26 ("we have held that if the General Assembly could have used a particular word in a statute but did not, we will not add that word by judicial fiat"). Though we are not deciding that this is what the term means here, we note that "in captivity" is often a phrase used in federal caselaw to describe persons held hostage by terrorist organizations and entitled to damages under the Foreign Sovereign Immunities Act exception in 28 U.S.C. 1605(a)(7). *See, e.g., Sutherland v. Islamic Republic of Iran,* 151 F.Supp.2d 27 (D.D.C.2001).

**{¶31}**  Even if we assume arguendo that Evans was under a legal disability due to his incarceration in prison, he alleged in his complaint that he was not incarcerated in 2001 through 2003, during which time the four-month statute of limitations expired.

---

[2] Evans is confined to a correctional institution in this state and therefore is an "incompetent" under R.C. 2111.01(D)(2). This raises the question of whether Evans can bring an action in the probate court, or if there must first be a guardianship established to act on his behalf. This issue was not raised below in the probate court and we will not address it here for the first time. *See In re Guardianship of Goins*, 7th Dist. Mahoning No. 02-CA-163, 2003-Ohio-931, ¶ 16-17.

**{¶32}** The probate court did not err when it granted judgment on the pleadings in favor of Margaret Evans-Sanford and dismissed Evans's complaint. Evans's action is barred by the four-month statute of limitations in the prior version of R.C. 2107.76. Therefore, the existence of material disputed facts is immaterial. We overrule his third assignment of error.

## IV. CONCLUSION

**{¶33}** We overrule Evans's assignments of error and affirm the judgment of the probate court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas, Probate Division to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.:  Concur in Judgment and Opinion.


                                    For the Court



                    BY: _____
                              Michael D. Hess, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**