OPINION
{¶ 1} Plaintiff-appellant, Thomas Popp, appeals[1] a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Integrated Electrical Systems, Inc. ("IES"), Thomas Popp Co., and Richard Humphrey, in a wrongful termination case. For the following reasons, we affirm the trial court's decision.
 {¶ 2} Appellant, an electrical contractor, formed Thomas Popp Co. in 1983. Appellant was the president of Popp Co. and William Beischel was its vice-president. In 1997, appellant and Beischel formed a limited liability company known as Kentucky Ventures, L.L.C. for the purpose of leasing equipment and a building to Popp Co. Appellant and Beischel were equal owners of Kentucky Ventures. Popp Co. entered into a 20-year lease with Kentucky Ventures for the building housing Popp 
Co.
 {¶ 3} In June 1997, Popp Co. joined 15 other electrical companies in the United States to become IES, a publicly held corporation whose purpose was to provide electrical services across the country. Popp 
Co. became a wholly-owned subsidiary of IES in 1998 but continued to be operated by appellant. Thus, appellant became an employee of IES and continued to serve as president of Popp Co. The 20-year lease between Popp Co. and Kentucky Ventures was entered before the formation of IES.
 {¶ 4} Although he initially had an employment contract with IES, appellant became an employee-at-will in 2002. That same year, IES created a lease committee to review the leases for all IES subsidiaries. The committee discovered that Popp Co. had entered into a 20-year lease with Kentucky Ventures. Richard Humphrey, a Regional Operating Officer for IES who oversaw Popp Co., communicated to appellant and Beischel that the terms of the lease were unacceptable. According to Humphrey, the lease was not consistent with leases executed by other IES subsidiaries and should have been only five years in length. IES offered to terminate the original lease and replace it with a new three-year lease. Appellant rejected the offer. Further negotiations over the lease dispute were unsuccessful.
 {¶ 5} Appellant subsequently retained counsel to advise him and Kentucky Ventures with regard to the lease dispute. On July 3, 2003, appellant's attorney sent IES a letter indicating that: "This is to advise that I represent Thomas Popp and William Beischel, principals of Kentucky Ventures, relative to a lease between Kentucky Ventures and Thomas Popp Company. They have consulted me with regard to their rights pursuant to that lease and any claim they may have for early termination of that lease." IES again offered to enter into a three-year lease with Kentucky Ventures.
 {¶ 6} On July 14, 2003, appellant was terminated. Four days later, appellant filed a complaint against appellees alleging, inter alia, wrongful termination. The complaint stated that appellant was terminated in violation of Ohio public policy in retaliation for consulting an attorney. Appellees moved for summary judgment. On March 2, 2005, the trial court granted summary judgment in favor of appellees, stating: "There is no clear public policy in Ohio to protect an employee from termination when that employee consults an attorney to protect his own business interests against those of his employer, especially when that consultation leads to an adversarial position and the threat of litigation against his employer." This appeal follows.
 {¶ 7} In a single assignment of error, appellant argues that the trial court erred by granting summary judgment in favor of appellees. Appellant contends he was wrongfully terminated and that, therefore, summary judgment in favor of appellees was inappropriate because IES violated Ohio public policy by terminating him for consulting an attorney with regard to issues that affected Popp Co.'s and IES' business interests.
 {¶ 8} It is well-established that employees-at-will, like appellant, may be terminated at any time for any reason or no reason at all as long as the termination is not contrary to law. Mers v. Dispatch Printing Co.
(1985), 19 Ohio St.3d 100, paragraph one of the syllabus. In 1990, the Ohio Supreme Court created an exception to the employment-at-will doctrine where "[a] discharge is in violation of a statute and thereby contravenes public policy." Greeley v. Miami Valley Maintenance Contrs.,Inc. (1990), 49 Ohio St.3d 228, paragraph two of the syllabus. TheGreeley holding was later expanded to recognize a cause of action in tort when the wrongful discharge violates the "Constitutions of Ohio and the United States, administrative rules and regulations, and the common law."Painter v. Graley, 70 Ohio St.3d 377, 1994-Ohio-334, paragraph three of the syllabus.
 {¶ 9} To prevail on a claim for wrongful discharge, a plaintiff must prove that (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (thecausation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). Kulch v. Structural Fibers, Inc., 78 Ohio St.3d 134, 151,1997-Ohio-219. Courts determine the clarity and jeopardy elements as a matter of law while the causation and overriding justification elements are questions of fact determined by the trier of fact. Id.
 {¶ 10} A public policy exception to the employment-at-will doctrine when an employee is discharged for consulting an attorney was first recognized by the Tenth Appellate District in Simonelli v. AndersonConcrete Co. (1994), 99 Ohio App.3d 254. In that case, the employee alleged she was wrongfully terminated for consulting and retaining an attorney regarding a disciplinary warning issued by her employer. The appellate court, without ruling on the merits of the claim, concluded that summary judgment was improper and held that "the act of firing an employee for consulting an attorney could serve as the basis for a public policy exception to the common law employment-at-will doctrine." Id. at 259. In so holding, the appellate court relied on the conclusion inThompto v. Coborn's Inc. (N.D.Iowa 1994), 871 F.Supp. 1097 that "a consultation with a lawyer is so fundamental to our system of justice that an employer's discharge of an employee for consulting a lawyer would violate public policy." Id.
 {¶ 11} In Chapman v. Adia Services, Inc. (1997), 116 Ohio App.3d 534, an employee was on a work-related visit at one of her employer's clients when she fell and sustained serious permanent knee injuries. The employee alleged she was wrongfully terminated for consulting an attorney regarding the merits of a potential personal injury claim against the employer's client. The First Appellate District concluded that summary judgment in favor of the employer was improper and held that "it is repugnant to the public policy of this state for employers to terminate employees for exercising their right to consult a lawyer." Id. at 544. "When an employer terminates an employee for consulting an attorney regarding an issue that affects the employer's business interests, the employer has violated the clear public policy of Ohio." Id. at syllabus.
 {¶ 12} In holding there was a clear public policy in favor of an employee consulting an attorney, the appellate court relied on Article I, Section 16 of the Ohio Constitution (which requires that all courts be open for redress of a citizen's injury), Ethical Considerations 1-1 and 2-1 of the Ohio Code of Professional Responsibility (which state that all persons should have ready access to legal representation), and the common law (which recognizes the need for legal representation for the redress of wrongs). Id. at 542-543. The appellate court also cited the importance of the role of attorneys in the preservation of society, and "the fact that attorneys are the key to obtaining relief from violations in the employment context." Id. at 543, citing Thompto, 871 F.Supp. 1097.
 {¶ 13} Subsequently, in Taylor v. Volunteers of America,153 Ohio App.3d 698, 2003-Ohio-4306, the First Appellate District was asked to extend the public policy exception to the employment-at-will doctrine to employees that are discharged for filing a lawsuit against their employer. The appellate court declined to do so, noting that "an employee's need for access to legal representation does not necessarily entail the right to file suit against his employer." Id. at ¶ 11. The court held that while there was a clear public policy under Chapman in favor of an employee consulting an attorney to determine his rights and remedies under the law, id., there was no clear public policy in favor of permitting an employee to file a lawsuit against his employer. Id. at ¶ 12. According to the appellate court, this holding allows an employee to freely elect between filing a lawsuit and jeopardizing his job on the one hand, and foregoing litigation and keeping his job on the other hand, without disrupting the balance of the employer-employee relationship. Id. at ¶ 11-12.
 {¶ 14} Other courts have split on whether the public policy exception recognized in Chapman extends to employees discharged for filing a lawsuit against their employer or third parties affecting the business interests of the employer. See Takach v. Am. Med. Technology, Inc.
(1998), 128 Ohio App.3d 457 (no public policy violation when an employee is terminated for filing a lawsuit against a third party that affects the business interests of the employer); Noble v. BrinkerInternatl., Inc. (S.D.Ohio 2001), 175 F.Supp.2d 1027 (same); but see, contra, Jenkins v. Parkview Counseling Ctr. Inc., Mahoning App. No. 99 CA 60, 2001-Ohio-3151 (public policy violation when an employee is terminated for suing his employer); Terrell v. Uniscribe ProfessionalServ., Inc. (N.D.Ohio 2004), 348 F.Supp.2d 890 (same).
 {¶ 15} As the trial court aptly noted, neither the Ohio Supreme Court nor this court have addressed whether the act of terminating an employee for consulting an attorney meets the public policy exception to the employment-at-will doctrine. Appellant urges this court to hold that Ohio public policy is violated whenever an employee is terminated for consulting an attorney, whether the consultation is work-related or instead relates to the employee's own business interest, and/or whether the consultation leads to an adversarial position or the threat of litigation against the employer. Appellees, in turn, argue that "if this Court adopts the public policy exception for consultation with an attorney, the public policy exception should be limited solely to matters that relate to the employee's employment."
 {¶ 16} We hold that there is no public policy violation when an employer terminates an employee for consulting and/or retaining an attorney with regard to the employee's own business interests. While the employee's consultation with the attorney in those situations will affect the employer's business interests, in that the employee's business interest will on many occasions be adverse to the employer, the employee is not consulting an attorney regarding any rights he has as an employee. Rather, the employee is consulting an attorney solely about his own business interests. We refuse to extend the public policy exception to the employment-at-will doctrine in those situations. Further, because the issue is not before us at this time, we decline to determine whether public policy is violated when an employee is terminated for filing a lawsuit against his employer.
 {¶ 17} In the case at bar, the trial court held that "There is no clear public policy in Ohio to protect an employee from termination when that employee consults an attorney to protect his own business interests against those of his employer, especially when that consultation leads to an adversarial position and the threat of litigation against his employer." We agree with the trial court that because appellant did not consult an attorney on behalf of a matter that was affecting him as an employee, but instead as a principal partner in Kentucky Ventures with regard to his own business interests, no public policy exception existed.
 {¶ 18} We therefore find that appellant has failed to prove the clarity element of a wrongful termination. The trial court therefore did not err by granting summary judgment in favor of appellees. Appellant's assignment of error is overruled.
Judgment affirmed.
Powell, P.J., and Walsh, J., concur.
[1] Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar.