[Cite as *Storer v. Natl. Coop. Bank*, 2024-Ohio-1676.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| Kelsey Storer, et al., | : | Case No. 23CA8 |
| Plaintiffs-Appellants, | : | |
| v. | : | |
| | | DECISION AND |
| National Cooperative Bank, et al., | : | JUDGMENT ENTRY |
| Defendants-Appellees, | : | **RELEASED 4/26/2024** |

APPEARANCES:

Stephen A. Simon, Tobias, Torchia & Simon, Cincinnati, Ohio, and Hannah Bivens, Bivens Law, LLC, Greenfield, Ohio for appellants.

Patricia A. Wise and Emilie K. Vassar, Spengler Nathanson P.L.L., Toledo, Ohio for appellees.

Hess, J.

{¶1} Plaintiff-Appellant Kelsey Storer appeals the trial court's judgment in favor of defendant-appellee National Cooperative Bank dismissing her claims against the bank on the ground that they fail to state a claim upon which relief can be granted. Storer brought four claims after the bank fired her from her job as a loan processor: wrongful termination; pregnancy discrimination; and aiding and abetting discrimination claims against two bank employees. Stevens, her co-plaintiff, brought a negligence claim alleging the bank owed him a duty to procure homeowners' insurance when it agreed to provide him a mortgage loan, but the bank never did so. The bank filed a motion to dismiss under Civ.R. 12(B)(6) on the ground that both plaintiffs failed to state claims for which relief can be granted. The trial court agreed and dismissed all the claims.

**{¶2}** Storer appealed the dismissal of her wrongful termination and pregnancy discrimination claims against the bank. Stevens did not appeal the dismissal of his claim. Storer raises two assignments of error. First, she contends that the trial court erred in dismissing her wrongful termination claim because she argues that Ohio public policy protects an employee who is assisting third parties in their legal disputes against the employee's employer. Second, she contends that the trial court erred in dismissing her pregnancy discrimination claim because she argues that she alleged she was terminated less than two months after she notified management of her pregnancy, and this is a sufficient nexus to survive a Civ.R. 12(B)(6) dismissal. Because this appeal is limited to the two claims Storer brought against the bank, Thacker, Goettke, and Stevens are not parties to this appeal.

**{¶3}** We find that the trial court properly dismissed the claims. Storer failed to allege a clear public policy that the bank violated when it terminated her. Therefore, the trial court properly dismissed her wrongful termination claim. The trial court properly dismissed her pregnancy discrimination claim because Storer failed to allege facts to support her bare legal assertion that the bank terminated her because she was pregnant. We overrule Storer's assignments of error and affirm the judgment of the trial court.

## I.    FACTS AND PROCEDURAL HISTORY[1]

**{¶4}** Storer and Stevens, who were romantically involved, filed a complaint against the bank and two bank employees, Thacker and Goettke. Storer alleged that while employed at the bank, she helped her boyfriend Stevens in a mortgage loan dispute with

---

[1] Because Storer appeals only the dismissal of the wrongful termination and pregnancy discrimination claims, we focus on the allegations related to those claims and do not delve into the details or legalities concerning Stevens' loan dispute.

the bank by emailing the bank's insurance analyst in June 2021 and the bank CEO in September 2021. She alleged the bank found out about the assistance she provided to Stevens' attorney on April 29, 2022, when Stevens' attorney provided copies of the June and September 2021 emails to the bank. On May 26, 2022, the bank fired Storer and told her she was fired because it viewed her actions in assisting Stevens' attorney in his dispute with the bank to be an ethical violation. Storer alleged that the bank's rationale for firing her was "bogus" and instead they fired her for being pregnant. Storer brought four claims: wrongful termination; pregnancy discrimination; and aiding and abetting discrimination claims against Thacker and Goettke. Stevens brought a negligence claim alleging the bank owed him a duty to procure homeowners' insurance when it agreed to provide him a mortgage loan, but the bank never did so. As a result, he alleged he did not have coverage when a windstorm allegedly caused property damage. Stevens' claim sounded in tort, not contract.

{¶5}    Storer alleged that she had worked as a loan processor at the bank since 2015. She had two previous pregnancies while employed there, one in 2016 and one in 2021. During her entire employment term up through May 2022, which included her two prior pregnancies, she had excellent job performance and had no warnings or disciplines about her conduct or job performance. During the first or second week of April 2022 – before the bank learned that she had been assisting Stevens' attorney with his loan dispute – Storer alleged that she told her supervisor, Jessica Richards, that she was pregnant with her third child, due in October 2022. Storer does not allege that she told anyone else at the bank about her pregnancy, nor does she allege that Jessica Richards told anyone else at the bank about it. She also does not allege that Jessica Richards was

involved in the decision to terminate her. Instead, she alleges, "on information and belief" Thacker and Goettke knew she was pregnant before she was fired. However, she also alleged that the bank learned that Stevens' attorney had copies of the June and September 2021 internal bank emails before they fired her. Storer alleged that during the termination meeting, Thacker and another bank employee, Ward, told Storer she was being fired for a "violation of ethics." Storer alleged that it was clear from the explanation given by Ward and Thacker at the termination meeting that Storer's ethics violation was the fact that she had assisted Stevens' lawyer in his loan dispute with the bank.

{¶6} The bank filed a Civ.R. 12(B)(6) motion to dismiss all the claims in the complaint for failure to state a claim for which relief can be granted. On the wrongful termination claim, the bank argued that the claim failed because there is no clear public policy that prohibits the bank from firing an employee who shares internal bank emails with, or otherwise assists opposing counsel in disputes involving third parties. On the pregnancy discrimination claim, the bank argued that Storer failed to plead a prima facie case of pregnancy discrimination based on direct or circumstantial evidence. The bank argued that Storer failed to plead any facts evidencing a nexus between her pregnancy and her termination. Rather she merely stated conclusively that the bank terminated her for her pregnancy.

{¶7} Storer opposed the motion to dismiss. In support of her wrongful termination claim, she argued, "Ohio courts have expressly recognized that an employer's firing an employee for consulting with an attorney violates Ohio public policy and gives rise to a claim for wrongful discharge." Storer also argued that her pregnancy discrimination claim contained sufficient facts to satisfy the "short and plain statement" requirement for a

complaint. She contended she provided a sufficient nexus between her pregnancy and her termination when she was terminated "only a month and a half approximately after management learned she was pregnant."  Storer contends that the fact that she was fired close in time to when she told Richards she was pregnant satisfies the nexus element, as well as the fact that the complaint "describes the highly suspicious circumstances surrounding her termination" – the " 'bogus' charge of misconduct soon after learning of her pregnancy."

{¶8}   In its reply, the bank argued that Storer is attempting to take the narrow public policy prohibition against firing an employee for consulting with an attorney on employment-related matters and expanding it to create a prohibition against firing an employee who assists a third party's attorney in disputes the third party has with the employer. The bank also argued that, with respect to her pregnancy discrimination claim, even the notice pleading standards require more than she has alleged to survive a motion to dismiss. The bank contended that "Storer's assertion that the decision to terminate Storer was motivated by her pregnancy are legal conclusions and opinions, and not factual allegations sufficient to survive a motion to dismiss."

{¶9}   The trial court issued a well-researched, reasoned opinion which dismissed all claims in the complaint. The trial court held that Storer's wrongful termination and pregnancy discrimination claims failed as a matter of law. On her wrongful termination claim, the trial court found that, although Storer cited legal authority that "an employee cannot be terminated for consulting with an attorney about their rights in connection with a matter that affects an employer's business interest," that is not what she alleged in her complaint. Storer had no legal rights or interest in Stevens' real estate or loan, and she

was not consulting an attorney regarding her own legal rights. Rather she was assisting a third party's attorney in a dispute with the bank.

> There is no case law to support a finding that the clear public policy of this state is to allow an employee to voluntarily provide information or assistance to the attorney of another person involved in a dispute with their employer. That could lead to significant adverse impact on businesses if employees were allowed to assist attorneys asserting claims against their employer. The Court finds that this is not a clear public policy of the State of Ohio and has no basis in the Ohio Constitution. Therefore, the Court finds that Count One [wrongful termination] of the Plaintiffs' complaint fails to state a claim under Ohio law upon which relief can be granted.

**{¶10}** On Storer's pregnancy discrimination claim, the trial court found fatal factual omissions in the complaint. For example, Storer alleged she told her immediate supervisor, Richards, in the first or second week of April 2022 about her pregnancy and the October 2022 due date. However, there were no other substantive factual allegations beyond that:

> She alleges "upon information and belief" that Defendants Thacker and Goettke were notified of her pregnancy before the decision to terminate her. There is no allegation as to what the "information and belief" is, or how or when the notification occurred. She also alleges "upon information and belief" that Thacker and Goettke participated in or otherwise facilitated the decision to terminate her employment due to her pregnancy.

The trial court found that while the law does not require "detailed factual allegations," the "factual allegations must be enough to raise a right to relief above the speculative level. * * * Conclusory statements in a complaint that are not supported by facts are not afforded the presumption of veracity and are insufficient to withstand a motion to dismiss." The trial court held that Storer's allegations that she was terminated due to her pregnancy were speculative and conclusory "as evidenced by the use of the words 'upon information and belief' in her complaint in lieu of specific factual allegations of a causal connection between her pregnancy and the termination of her employment."

**{¶11}** Storer appealed.

## II. ASSIGNMENTS OF ERROR

**{¶12}** Storer identified two assignments of error for review:

I. The trial court erred, as a matter of law, when it dismissed Plaintiff-Appellant Kelsey Storer's claim against Defendant-Appellee National Cooperative Bank for wrongful discharge in violation of public policy under Ohio law.

II. The trial court erred, as a matter of law, when it dismissed Plaintiff-Appellant Kelsey Storer's claim against Defendant-Appellee National Cooperative Bank for pregnancy discrimination under R.C. Chapter 4112.

## III. Review of Civ.R. 12(B)(6) Motion to Dismiss

### A. Standard of Review

**{¶13}** We review dismissals pursuant to Civ.R. 12(B)(6) de novo, presume the truth of all material factual allegations in the complaint, and make all reasonable inferences in plaintiff's favor. *State ex rel. Yost v. Rover Pipeline, L.L.C.*, 167 Ohio St.3d 223, 2022-Ohio-766, 191 N.E.3d 421, ¶ 6. " 'In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6) for failure to state claim upon which relief can be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought.' " *Id.* at ¶ 18, quoting *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12; *Williams v. MJS Enterprises, Ltd.*, 2022-Ohio-3695, 199 N.E.3d 132, ¶ 20 (4th Dist.).

### B. Wrongful Termination

**{¶14}** "The common-law doctrine of employment at will generally governs employment relationships in Ohio. Under this doctrine, a general or indefinite hiring is terminable at the will of either the employee or the employer; thus, a discharge without

cause does not give rise to an action for damages." *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, ¶ 5, citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 67, 652 N.E.2d 653 (1995). However, Ohio recognizes a public policy exception to the employment-at-will doctrine when an employee's termination violates a clear public policy. A wrongful termination claim consists of four elements: (1) a clear public policy exists and is manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked an overriding legitimate business justification for the dismissal (the overriding justification element). The clarity and jeopardy elements are questions of law to be decided by the court, while factual issues related to the causation and overriding justification elements are generally for the trier of fact to resolve. *Wiles v. Medina Auto Parts* at ¶ 6-11, citing *Collins*, 73 Ohio St.3d at 69–70.

{¶15} Storer argues that the trial court erred in determining that she failed to plead the clarity element because Ohio has a clear public policy against firing an employee for consulting with an attorney, citing *Chapman v. Adia Services, Inc.*, 116 Ohio App.3d 534, 537, 688 N.E.2d 604 (1st Dist. 1997) and *Simonelli v. Anderson Concrete Co.*, 99 Ohio App.3d 254, 258-59, 650 N.E.2d 488 (10th Dist. 1994). In *Chapman,* Chapman was employed by Adia as a manager. Part of her job duties included work with Adia's client, Procter and Gamble. While on a work-related visit to P & G, Chapman fell and sustained a serious knee injury. Chapman retained an attorney and was considering a lawsuit

against P & G. Although the case involved complicated facts, ultimately Chapman filed a wrongful termination claim against Adia, which Chapman lost on a summary judgment motion. The appellate court reversed. It found that Chapman consulted with an attorney to assess the validity of her rights and potential claims. "We conclude that the trial court erred in granting summary judgment because terminating an employee for consulting an attorney regarding the merits of a suit that would affect the employer's interest is a violation of public policy in Ohio." *Chapman* at 544.

{¶16} In *Simonelli,* an employee retained a lawyer to assist with an employment-related disciplinary claim she had with her employer. The employer allegedly terminated her "for getting an attorney involved in their dispute." *Simonelli* at 257. The appellate court held:

> [W]e conclude that the act of firing an employee for consulting an attorney could serve as the basis for a public policy exception to the common-law employment-at-will doctrine. We make no determination regarding the merits of plaintiff's claim; rather, genuine issues of fact remain concerning whether plaintiff was actually discharged for consulting with an attorney. Accordingly, summary judgment was improper on plaintiff's claim for violation of public policy.

*Simonelli,* 99 Ohio App.3d 254, 259. In both *Simonelli* and *Chapman*, the employee retained the lawyer to consult on their own behalf concerning their legal rights as it related to their employment rights or employment-related tort claims.

{¶17} Storer argues that this public policy should be extended to her because even though she did not consult with a lawyer and she did not have a legal right or interest in the loan dispute, she was "associated" with an individual – Stevens – who consulted an attorney in his loan dispute with her employer. She argues that the legal concept of "associational discrimination" should apply to expand the clarity element to her situation. "Associational discrimination" is the claim that a person has been terminated because of

their association with a person covered by the discrimination provisions in R.C. 4112.02 (i.e., race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person). *See Edizer v. Muskingum Univ.*, S.D.Ohio No. 2:11-CV-799, 2012 WL 4499030, *7 (a professor alleged she was terminated because she had a disabled son and the federal court found that "Ohio does recognize a claim of associational discrimination under Ohio Revised Code § 4112.02."). However, Storer did not assert a claim for associational discrimination in her complaint, nor did she raise this argument in the trial court below and cannot raise it here for the first time. "It is well-settled that a party may not raise new issues or legal theories for the first time on appeal." *Matter of E.A.G.*, 4th Dist. Washington No. 23CA7, 2024-Ohio-315, ¶ 80, citing *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975). "Thus, a litigant who fails to raise an argument before the trial court forfeits the right to raise that issue on appeal." *Id.*, citing *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 30 ("an appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts").

**{¶18}** The bank argues that the public policy exception Storer relies upon is narrow and applies only where the employee consulted an attorney for reasons related to employment and does not extend to all consultations, citing *Popp v. Integrated Elec. Servs.*, 12th Dist. Butler No. CA2005-03-058, 2005-Ohio-5367, ¶ 15-16. In *Popp*, the plaintiff consulted an attorney concerning his rights in a lease that affected his employer's business interests. The appellate court reviewed *Simonelli, supra, Chapman, supra,* and several other cases that involved the termination of employees who had consulted attorneys in various scenarios. The appellate court refused to find a public policy

exception to the employment-at-will doctrine when an employee has consulted an

attorney about personal business interests and not any employment-related rights:

> We hold that there is no public policy violation when an employer terminates
> an employee for consulting and/or retaining an attorney with regard to the
> employee's own business interests. While the employee's consultation with
> the attorney in those situations will affect the employer's business interests,
> in that the employee's business interest will on many occasions be adverse
> to the employer, *the employee is not consulting an attorney regarding any
> rights he has as an employee*. Rather, the employee is consulting an
> attorney solely about his own business interests. (Emphasis added.)

*Popp* at ¶ 16. The appellate court acknowledged that Ohio courts are split on whether

"the public policy exception recognized in *Chapman* extends to employees discharged for

filing a lawsuit against their employer or third parties affecting the business interests of

the employer." *Id.* at ¶ 14 (citing cases from the First, Seventh, and Eighth Appellate

Districts). Moreover, the appellate court recognized that neither the Supreme Court of

Ohio nor its own court "have addressed whether the act of terminating an employee for

consulting an attorney meets the public policy exception to the employment-at-will

doctrine." *Id.* at ¶ 15. Additionally, the court noted that the First District refused to extend

its own holding in *Chapman* to find a clear public policy prohibiting an employer from firing

an employee who has sued the employer. *Taylor v. Volunteers of Am.,* 153 Ohio App.3d

698, 2003-Ohio-4306, 795 N.E.2d 716, ¶ 10 (1st Dist.).

{¶19} In *Taylor,* the First District explained its rationale against extending

*Chapman* to instances where the employee has filed suit against the employer:

> [W]e are persuaded that the enunciation of a clear public policy in favor of
> permitting an employee to file suit against his employer would disrupt the
> balance of the employer-employee relationship. * * * both the employer and
> the employee have an interest in employee evaluation. The employer
> should be able to freely inform the employee of performance problems so
> that the employee may work with the employer to correct those problems. If
> the filing of suit were a protected decision, we agree that there would be the
> danger that an employee, anticipating an adverse job action due to poor

performance, would file suit against his employer as a "preemptive strike" against termination. Further, an extension of the *Chapman* holding to the actual filing of a lawsuit would place the employer in the unenviable position of having to continue in a relationship that has been tainted by the acrimonious nature of litigation.

*Taylor v. Volunteers of Am.* at ¶ 12.

**{¶20}** We find no legal authority to support an expansive public policy exception that would prohibit an employer from terminating an employee who assists a third party's attorney on legal matters affecting the employer's business. *Jacobs v. Highland Cty. Bd. of Commrs.*, 2014-Ohio-4194, 20 N.E.3d 300, ¶ 21 (4th Dist.) ("not only should the claimed public policy exception to the at-will doctrine of employment be sufficiently clear, it should be narrowly applied"). The concern identified by the trial court supports our decision not to extend *Chapman*: "That could lead to a significant adverse impact on businesses if employees were allowed to assist attorneys asserting claims against their employers." And, analogous to the rationale in *Taylor*, forcing an employer to work with an employee who is assisting a third party's attorney in a dispute against the employer would "place the employer in the unenviable position of having to continue in a relationship that has been tainted" by the dubious nature of an untrustworthy employee. Further, Storer did not allege that she consulted an attorney to advise her of any rights she had as an employee. Therefore, because the issue is not before us, we take no position on whether to recognize the public policy exception announced in *Chapman*, *supra.*

**{¶21}** We find that Storer failed to meet her burden to plead a clear public policy that the bank violated when it terminated her. The trial court properly dismissed her

wrongful termination claim because she failed to plead the clarity element. We overrule her first assignment of error.

### C. Pregnancy Discrimination

**{¶22}** A pregnancy discrimination claim consists of four elements: (1) the employee was pregnant; (2) the employee was qualified for her job; (3) the employee was subjected to an adverse employment decision; and (4) a nexus exists between the pregnancy and the adverse employment decision. *Hambuechen v. 221 Mkt. N., Inc.*, 2016-Ohio-3156, 66 N.E.3d 70, ¶ 37 (5th Dist.), citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir.2000). Storer contends that she met the nexus element because the mere fact that she was terminated withing two months of telling her immediate supervisor she was pregnant suffices to allege a proper nexus between her pregnancy and the bank's decision to fire her. She also clarified that the allegations in her complaint that are based "on information and belief" only go to the aiding and abetting claims, which she does not appeal. She argues that the relevant allegations supporting the nexus are that she "advised her supervisor, Jessica Richards, that she was pregnant with her third child" and "Defendant NCB knew Plaintiff was pregnant" when it fired her two months later. In other words, Storer argues it is enough to plead, "I was pregnant, the bank knew it and fired me, therefore it was discrimination."

**{¶23}** The bank responds that if Storer were correct, then any person that is a member of a protected class would plead a viable claim just by virtue of their membership in the protected class. In other words, the bank argues that any pregnant woman could allege a pregnancy discrimination claim by alleging they were fired while pregnant. No further underlying supporting facts would be needed.

**{¶24}** A complaint must allege (1) a legal cause of action and (2) facts which, if construed as true, would support that cause of action. *Tuleta v. Med. Mut. Of Ohio*, 2014-Ohio-396, 6 N.E.3d 106, ¶ 38 (8th Dist.). The general pleading requirements are in Civ.R. 8:

> Civ.R. 8(A) states: "A pleading that sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." " 'Under the notice pleading requirements of Civ.R. 8(A)(1), the plaintiff need only plead sufficient, operative facts to support recovery under [the plaintiff's] claims.' " " 'Nevertheless, to constitute fair notice, the complaint must still allege sufficient underlying facts that relate to and support the alleged claim, and may not simply state legal conclusions.' " A complaint is not "fatally defective" if it does not set forth each element of a cause of action "with crystalline specificity." "However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." "In other words, if there is no hint in the pleadings of proof of a particular point necessary to enable the pleader to prevail, the pleader has failed to provide the notice required by the rule." (Citations omitted.)

*Evans v. Ohio Atty. Gen.,* 4th Dist. Scioto No. 20CA3927, 2021-Ohio-1146, ¶ 8. "While the standard necessary to satisfy the requirements of Civ.R. 8(A) is low, the '[s]implified pleading under Rule 8 does not mean that the pleader may ignore the operative grounds underlying a claim for relief.' " (Citations omitted.) *Klan v. Med. Radiologists, Inc.*, 12th Dist. Warren No. CA2014-01-007, 2014-Ohio-2344, *3, quoting *Tuleta* at ¶ 38.

**{¶25}** There is no question that Storer's complaint sets forth the four legal elements of a cause of action for pregnancy discrimination. The question is whether it alleges *sufficient underlying facts* to support those elements. And, although each element of a cause of action does not have to be alleged with exacting specificity, the complaint must still allege "sufficient underlying facts that relate to and support the alleged claim

and may not simply state legal conclusions." *Estate of Colley v. Crabtree*, 4th Dist. Scioto No. 22CA3997, 2024-Ohio-437, ¶ 65, citing *Evans, supra.*

**{¶26}**  In *Tuleta, supra*, the court found that there was no question that the plaintiff stated the elements of a claim for malicious prosecution, but he failed to allege sufficient operative underlying facts to support the claim. *Tuleta* at ¶ 36, 39-40.  The court found "there are scant factual allegations in Tuleta's complaint" and his allegations that the police chief's actions "were made with malice" and he " 'instituted and/or continued prosecution' when there was complete lack of probable cause" were legal conclusions with no underlying factual allegations to support them. *Id.* at ¶ 37, 39.

**{¶27}**  Similarly here, Storer alleges all the legal elements of a pregnancy discrimination claim: (1) "at the time of her termination * * * Storer was approximately 19-months [sic] pregnant"; (2) she was "qualified to perform her job"; (3) "Defendant NCB knew Plaintiff was pregnant"; and (4) "Defendant NCB's decision to terminate Plaintiff was motivated by the fact she was pregnant, in violation of O.R.C. §§ 4112.01(B) and 4112.02(A)."  However, Storer alleges no set facts to support her legal conclusion that the bank's decision to terminate her "was motived by the fact she was pregnant."

**{¶28}**  Storer claims that the fact that she alleged she was terminated less than two months after she told her direct supervisor that she was pregnant was  "temporal proximity" and a sufficient factual allegation to support her claim she was fired for being pregnant, citing *Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2006) However, *Asmo* is distinguishable because it involved a Civ.R. 56 summary judgment motion, not a motion to dismiss under Civ.R. 12(B)(6). The sufficiency of the factual allegations of the complaint was not a legal issue and was not discussed. Additionally, the court *did not* hold that

temporal evidence alone is factually sufficient to show a nexus between the pregnancy and the termination. In fact, it expressly stated it was not sufficient, "the temporal proximity between Asmo informing Keane of her pregnancy with twins and Keane's decision to terminate her cannot alone prove pretext." *Asmo* at 598; *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir.2000) ("temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence").

**{¶29}** Instead, the court reviewed the evidence Asmo provided in opposing the summary judgment motion and found Asmo's supervisor's conduct and reaction to her pregnancy announcement was "the most significant evidence showing pretext." *Asmo* at 594. After Asmo announced her pregnancy with twins on a conference call "the news was met with congratulations from all her colleagues except Santoro [Asmo's supervisor], who did not comment and then 'simply moved on to the next business topic in the conference call.' Santoro's initial silence is suspect. * * * he did not mention her pregnancy at all. * * * Given the combination of Asmo's job's being particularly demanding of time due to travel and her announcement of not just a pregnancy, but a pregnancy of twins, Santoro's silence could be interpreted as discriminatory animus." *Asmo* at 594-595. For these reasons, *Asmo* is distinguishable. Moreover, given the short-term nature of pregnancy, a degree of temporal proximity will always exist in pregnancy discrimination claims.

**{¶30}** Here Storer has alleged no facts that we might interpret favorably as a discriminatory animus on the part of the bank. She simply alleged the elements of the claim with no underlying factual allegations.

> "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusion' or 'a formulaic recitation of the elements of a cause of action

will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' "

*Harper v. Weltman, Weinberg & Reis Co., L.P.A.,* 8th Dist. Cuyahoga No. 107439, 2019-Ohio-3093, ¶ 30, quoting *Sultaana v. Horseshoe Casino*, 8th Dist. Cuyahoga No. 102501, 2015-Ohio-4083, ¶ 12, quoting *Digiorgio v. Cleveland*, 8th Dist. Cuyahoga No. 95945, 2011-Ohio-5878, ¶ 49.

**{¶31}** We find that Storer failed to meet her burden to plead facts to support a nexus between her pregnancy and her termination. The trial court properly dismissed her pregnancy discrimination claim. We overrule her second assignment of error.

IV. CONCLUSION

**{¶32}** We overrule appellant's assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
       Michael D. Hess, Judge




### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**